# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DONALD BROOMFIELD,

        Petitioner,

vs.                             Case No.:   3:18-cv-1525-J-32PDB
                                              3:14-cr-156-J-32PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

      Before the Court is Petitioner Donald Broomfield's Second Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 5) and Motion to Supplement (Civ. Doc. 11).[1] A jury convicted Petitioner of two drug distribution offenses under 21 U.S.C. §§ 841 and 846. He now raises four claims of ineffective assistance of counsel regarding pretrial suppression issues, as well as one claim that the prosecutor was not authorized to represent the United States. The government filed a response in opposition. (Civ. Doc. 16). Petitioner filed a reply brief (Civ. Doc. 19) with exhibits (Civ. Doc. 19-1 through Civ. Doc. 19-6). Thus, the case is ripe for a decision.

---

[1]     Citations to the record in the criminal case, United States vs. Donald Broomfield, No. 3:14-cr-156-J-32PDB, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:18-cv-1525-J-32PDB, will be denoted "Civ. Doc. __." The Court will cite the page number designated by CM/ECF.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motion. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons below, Petitioner's Second Amended § 2255 Motion is due to be denied.

## I.      Background

In the summer of 2014, detectives with the Jacksonville Sheriff's Office (JSO) received a tip that Petitioner was distributing kilogram quantities of cocaine in Jacksonville, Florida. (Crim. Doc. 61, First Suppression Hearing Transcript at 9-12); (Crim. Doc. 109, Presentence Investigation Report at ¶¶ 8, 9). A cooperating arrestee in another city told a JSO Detective, Charles Bates, that he had purchased cocaine from Petitioner, observed Petitioner deal drugs, and traveled with Petitioner to Texas to acquire cocaine. (Crim. Doc. 61 at 9-11; Crim. Doc. 109 at ¶ 8). The cooperator said that Petitioner drove a black Chrysler 300 that was outfitted with hidden compartments for transporting cocaine. (Crim. Doc. 61 at 9-11; Crim. Doc. 109 at ¶ 8). According to the cooperator, Petitioner would drive to Texas to acquire his drug supply, and afterward bring the drugs back to a location on Jacksonville's westside, on

Maple Street near 103rd Street. (Crim. Doc. 61 at 12); (Crim. Doc. 109 at ¶¶ 8, 9). The cooperator gave detectives Petitioner's cell phone number as well. (Crim. Doc. 61 at 10). Because Petitioner knew about the cooperator's arrest, the cooperator was unable to provide "proactive" assistance. (Id. at 12). However, JSO detectives found a "local source that also had information on Mr. Broomfield." (Id.).

Based on the information provided by the cooperator and the local source, JSO detectives obtained three orders in state court authorizing them to monitor Petitioner's cell phone using real-time cell site data. (See Civ. Doc. 1-1 at 5-7, 11-13, 27-28).[2] On July 23-25, 2014, and August 6-8, 2014, the detectives tracked Petitioner's cell phone as he made two trips to Houston, Texas, and back to Jacksonville. (Crim. Doc. 61 at 17-21; see also Crim. Docs. 58-1, 58-2). Two detectives surveilled the Maple Street residence on July 25, 2014 – the same day Petitioner returned from his first trip to Texas – and noticed a suspicious amount of traffic at the house. (Crim. Doc. 61 at 21-23). When Petitioner returned from his second trip to Texas on August 8, 2014, JSO officers were waiting for him. Officer E. Valerio followed Petitioner's Chrysler 300 and pulled him over when he committed an illegal lane change. (Crim. Doc. 61 at 56-61). Meanwhile, Officer J.C. Williams followed close behind with a

---

[2]     In addition, JSO officers obtained a pen register order on July 31, 2014. (Civ. Doc. 1-1 at 20-26).

canine. (Id.). As Officer Valerio conducted the traffic stop, the canine sniffed around the car and alerted to the presence of narcotics. (Id. at 131-34). During the ensuing search, the officers located about 1.8 kilograms of cocaine in a hidden compartment in the vehicle, as well as roughly $6,000 on Petitioner's person. (See Crim. Doc. 109 at ¶ 12). Later, police officers searched the Maple Street residence and a storage unit, where they found digital scales, a cocaine press, cocaine cutting agents, drug packaging materials, $4,000 in cash, and a plastic baggie of cocaine. (Id. at ¶¶ 13, 14).

On September 18, 2014, a federal grand jury in Jacksonville returned a two-count indictment against Petitioner. (Crim. Doc. 1). Count One charged him with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count Two charged him with possession of 500 grams or more of cocaine with intent to distribute, in violation of §§ 841(a)(1) and 841(b)(1)(B).

Petitioner pleaded not guilty to the charges and moved to suppress the evidence. In the First Motion to Suppress (Crim. Doc. 47) and Supplemental Motion (Crim. Doc. 59), Petitioner argued that the August 8, 2014, traffic stop was not justified by probable cause or reasonable suspicion, that Officer Valerio unreasonably asked Petitioner to step out of the vehicle, that the officers unreasonably prolonged the traffic stop to conduct a canine sniff, and that the officers lacked probable cause to search the vehicle. The Honorable Patricia D.

Barksdale, United States Magistrate Judge, conducted an evidentiary hearing on June 3, 2015, at which Detective Bates, Officer Valerio, Officer Williams, and Petitioner testified. (See generally Crim. Doc. 61). After the hearing, Judge Barksdale recommended that the Court deny the First Motion to Suppress and Supplemental Motion, concluding that the traffic stop, canine sniff, and ensuing search were each lawful. (Crim. Doc. 62, First Report and Recommendation). Petitioner did not file objections. Upon de novo review, the Court adopted the report and recommendation and denied the First Motion to Suppress and Supplemental Motion. (Crim. Doc. 65).

Afterward, Petitioner filed a second motion to suppress, this time arguing that there were irregularities with a search warrant issued on August 6, 2014, which authorized the collection of real-time cell site data. (Crim. Doc. 67, Second Motion to Suppress). Petitioner suggested that the judge's signatures on the warrant and the warrant affidavit did not match, and that the date had been changed from August 8 to August 6. Judge Barksdale conducted a second suppression hearing on August 27, 2015, at which Detective S.J. Medlin testified about obtaining the search warrant from the Honorable Brad Stetson, a now-retired judge on Florida's Fourth Judicial Circuit. (See generally Crim. Doc. 136, Second Suppression Hearing Transcript). After the hearing, Judge Barksdale recommended that the Court deny the Second Motion to Suppress as well. (Crim. Doc. 75, Second Report and Recommendation). Crediting Detective

Medlin's testimony, Judge Barksdale recommended that Judge Stetson signed the search warrant and warrant affidavit, and that the date had been changed from August 5 to August 6 because Detective Medlin had mistakenly told Judge Stetson that the date was August 5. Judge Barksdale concluded that the search warrant was obtained validly and properly. Petitioner did not object to this report and recommendation either. Following de novo review, the Court adopted the Second Report and Recommendation and denied the Second Motion to Suppress. (Crim. Doc. 78).

Petitioner proceeded to a jury trial in October 2015. (Crim. Docs. 137, 138, 139, 145). The evidence showed that

> [b]etween 2010 and August 2014, Broomfield smuggled from Texas to Florida more than 50 kilograms of cocaine that he concealed in hidden compartments in his Chrysler 300 sedan and in a Chevrolet Tahoe vehicle. He divided the cocaine into smaller quantities for himself and for his recruits, which included his cousin, Donshay Christia, Mandis Thomas, and James Degelmann, to sell at $26,000 to $43,000 per kilogram. Broomfield also recruited Raymond Priester to transport cash from Atlanta, Georgia, and from Jacksonville to Texas. When arrested, Broomfield possessed 1,600 grams of cocaine, $5,000 in cash, and a card for a self-storage facility inside which police officers discovered a small amount of cocaine and $4,000 in cash.

United States v. Broomfield, 698 F. App'x 591, 592 (11th Cir. 2017). After four days of trial, the jury returned a guilty verdict as to both counts of the indictment. (Crim. Doc. 90, Jury Verdict).

A few months later, the Court sentenced Petitioner to concurrent terms of 180 months in prison as to both counts. (Crim. Doc. 114, Judgment). Petitioner appealed the sentence, "argu[ing] that his sentence below the advisory guideline range [was] substantively unreasonable." Broomfield, 698 F. App'x at 591-92. The Eleventh Circuit rejected Petitioner's argument and affirmed his sentence on October 3, 2017. Id. at 592. Petitioner did not seek certiorari review from the Supreme Court. As such, his conviction and sentence became final on January 1, 2018, when time expired to file a petition for a writ of certiorari. Clay v. United States, 537 U.S. 522, 532 (2003).

## II.    Second Amended § 2255 Motion

With the assistance of counsel, Petitioner timely filed his initial § 2255 motion on December 28, 2018. (Civ. Doc. 1). However, counsel later withdrew because of irreconcilable differences and Petitioner opted to represent himself. (See Civ. Doc. 6). Petitioner is now proceeding on a pro se Second Amended § 2255 Motion, which he filed on January 7, 2019. (Civ. Doc. 5 at 16). Although Petitioner filed the Second Amended § 2255 Motion after § 2255(f)(1)'s statute of limitations expired, the United States concedes that it relates back to the initial § 2255 motion under Fed. R. Civ. P. 15(c). (Civ. Doc. 16 at 8-9). Petitioner raises three claims of ineffective assistance of counsel regarding the handling of his motions to suppress.

Petitioner then filed a Motion to Supplement on May 8, 2019. (Civ. Doc.

11). He seeks to add a fourth claim of ineffective assistance of counsel regarding pretrial suppression issues. (Civ. Doc. 11-1, Ground Four). He also seeks to raise a claim that the prosecuting Assistant United States Attorney (AUSA) was not authorized to represent the United States. (Civ. Doc. 11-2, Ground Five). The United States concedes that Ground Four relates back to the original § 2255 motion, but contends that Ground Five does not relate back and is therefore time-barred. (Civ. Doc. 16 at 9).

### III.   Law

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeds the maximum authorized by law; and (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). "[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019).

To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that his counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir.) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)), cert. dismissed, 140 S. Ct. 339 (2019). To demonstrate prejudice, the petitioner must show a reasonable likelihood that the result of the proceeding would have been different but for counsel's error. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Where, as with several of the claims here,

> defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim…, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

Id. at 382 (footnote omitted).

## IV.   Discussion

### A. Ground One

Petitioner argues that trial counsel gave ineffective assistance by failing to challenge Judge Stetson's territorial jurisdiction to issue the August 6, 2014, search warrant ("August 6 search warrant"), which authorized JSO to gather real-time cell site data about Petitioner's cell phone. (Civ. Doc. 5 at 4-5); (see also Civ. Doc. 5-2, Search Warrant and Warrant Affidavit). Petitioner claims that the search warrant was unauthorized under 18 U.S.C. § 3117. Section 3117(a) provides that "[i]f a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such order may authorize the

use of that device within the jurisdiction of the court, and outside that jurisdiction <u>if the device is installed in that jurisdiction</u>." 18 U.S.C. § 3117(a) (emphasis added). Section 3117(b) defines the term "tracking device" as "an electronic or mechanical device which permits the tracking of the movement of a person or object." <u>Id.</u>, § 3117(b).

Petitioner alleges that JSO officers knew he was in Atlanta, Georgia, when they sought the search warrant, but failed to tell the state court judge. (Civ. Doc. 19 at 4). Thus, Petitioner argues that the August 6 search warrant, in effect, authorized the installation and use of a tracking device outside of the issuing court's jurisdiction, in violation of § 3117(a).[3] In his affidavit, Petitioner asserts that he raised concerns about this issue with trial counsel, but that counsel did not investigate or pursue the matter. (Civ. Doc. 5-1 at ¶¶ 5, 6).

It was neither objectively unreasonable nor prejudicial for defense counsel not to pursue this argument in a motion to suppress. First, Petitioner's claim depends on the assumption that the collection of real-time cell site data converted Petitioner's cell phone into a "tracking device" under 18 U.S.C. § 3117. At the time Petitioner's case was pending, neither the Supreme Court nor the Eleventh Circuit had resolved this issue. Other courts were split over the question. <u>In re Smartphone Geolocation Data Application</u>, 977 F. Supp. 2d 129,

---

[3]     Petitioner does not allege in Ground One that the August 6 search warrant violated the Fourth Amendment. He focuses on 18 U.S.C. § 3117.

148-50 (E.D.N.Y. 2013) (collecting cell phone's geolocation information did not turn cell phone into a tracking device for purposes of § 3117); but see In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority, 396 F. Supp. 2d 747, 759 (E.D. Tex. 2005) ("Real-time location monitoring effectively converts a cell phone into a tracking device ...."). Thus, it was not established that a cell phone qualified as a "tracking device" under § 3117(b), such that defense counsel would have had a winning argument that the August 6 search warrant violated § 3117(a). Indeed, the Eleventh Circuit recently expressed doubt about construing the term "tracking device" broadly. United States v. Taylor, 935 F.3d 1279, 1286 (11th Cir. 2019) ("[I]f the term 'tracking device' included every gadget capable of acquiring and transmitting information that could somehow, in some way, aid in identifying a person's location, the term would be unimaginably broad ...."). Where the law is at best unsettled, as it was here, counsel does not perform deficiently by failing to raise an argument that was not clearly supported by established law. See, e.g., Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1333-34 (11th Cir. 2016) (appellate counsel was not ineffective for failing to challenge a manslaughter jury instruction where "the law was at best unsettled."); Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) (an attorney is not liable for an error of judgment on an unsettled proposition of law) (citations omitted).

Second, the record does not support Petitioner's allegation that JSO officers knew he was in Atlanta, Georgia, when the officers sought the August 6 search warrant. Although Petitioner had residences in Orlando, Florida, and Atlanta, Georgia, JSO detectives knew that Petitioner frequented the Maple Street residence in Jacksonville once or twice a week, often arriving unannounced. (Crim. Doc. 109 at ¶ 9). Two tipsters had provided information that Petitioner was dealing cocaine from the Maple Street location. (Crim. Doc. 61 at 9-12). JSO detectives had conducted further surveillance of their own, which seemed to confirm that Petitioner was distributing drugs from the Maple Street residence. (See id. at 17-23). Thus, when the officers sought the August 6 search warrant, they had reason to believe Petitioner was (or would be) in Jacksonville. Once the search warrant was obtained and cell site tracking was enabled, cell site data revealed that Petitioner was in Atlanta at the time (id. at 23-24), but that does not mean the officers knew that fact when they requested the warrant.

Thus, the officers had a good faith basis to believe Petitioner was, or would be, in Jacksonville. Because Petitioner has not shown that the officers knowingly or recklessly disregarded whether he was outside of the state court's jurisdiction, Petitioner has not shown that the evidence would have been excluded. See Taylor, 935 F.3d at 1288-93 (under the good faith exception, the exclusionary remedy did not apply to evidence seized from computers located

outside the jurisdiction of the magistrate judge who issued the search warrant where there was no evidence of "chicanery," "duplicity," or "gamesmanship" by FBI agents).

Third, even if the August 6 search warrant did not comply with § 3117(a), Petitioner has not established that the exclusionary remedy would have been applicable as a matter of law. Although the Eleventh Circuit has not addressed this specific issue either, other circuit courts have rejected the idea that suppression of the evidence is an appropriate remedy for non-compliance with § 3117(a). In United States v. Gbemisola, the court of appeals was "inclined to agree" that § 3117(a) "does not empower a court to authorize the installation of a tracking device outside its jurisdiction." 225 F.3d 753, 757 (D.C. Cir. 2000). But, the court stated, this "agreement does not resolve the suppression issue." Id. at 758. The court explained that "section 3117 provides a basis for authorizing the use of a mobile tracking device," but in contrast to other statutes, "section 3117 does not prohibit the use of a tracking device in the absence of conformity with the section." Id. (emphasis in original) (citations omitted). "Nor does it bar the use of evidence acquired without a section 3117 order." Id. The court concluded that a warrant was unnecessary to place a tracking device in a mail parcel because the device merely followed the parcel's movements on public roads, such that excluding the evidence was not the

correct remedy. Id. at 758-59.[4] Similarly, in United States v. Forest, the defendant argued "that the DEA's use of his cell-site data effectively turned his cellular phone into a 'tracking device' within the meaning of 18 U.S.C. § 3117(a)," such that the evidence should be suppressed for lack of compliance with the statute. 355 F.3d 942, 949 (6th Cir. 2004), cert. granted, judgment vacated on other grounds by Garner v. United States, 543 U.S. 1100 (2005). The Sixth Circuit rejected that argument, "conclud[ing] that § 3117 does not provide a basis for suppressing Garner's cell-site data or any other evidence in the present case." Id. at 950. Likewise, even if the August 6 search warrant (or either of the preceding court orders allowing the collection of cell site data) failed to comply with § 3117(a), Petitioner has failed to show a reasonable likelihood that the evidence would have been suppressed.

Trial counsel did not perform deficiently by not seeking to suppress the evidence based on an alleged violation of § 3117(a).[5] Nor has Petitioner shown

---

[4]    In 2018, the Supreme Court held "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell site location information]," Carpenter v. United States, 138 S. Ct. 2206, 2217 (2018), and "that the Government must generally obtain a warrant supported by probable cause before acquiring such records," id. at 2221. Carpenter was not decided until after Petitioner's sentence became final. Moreover, JSO detectives did obtain a search warrant to collect real-time cell site data beginning August 6, 2014, and Petitioner does not argue that the officers lacked probable cause to obtain the warrant.

[5]    To decide whether counsel performed ineffectively, the Court need not decide the legal issues as if a motion to suppress had been filed. Under

prejudice, that is, that the evidence would have been excluded even if counsel had raised the issue. Relief on Ground One is therefore due to be denied.

## B. Ground Two

Next, Petitioner claims that trial counsel gave ineffective assistance by failing to object to either report and recommendation concerning his motions to suppress. (Civ. Doc. 5 at 7). Petitioner complains that by failing to file objections, counsel failed to preserve Petitioner's ability to raise any suppression arguments on appeal. (Id.).

For the sake of discussion, the Court assumes that counsel's failure to file objections, thereby failing to preserve any suppression issue for appeal, constituted deficient performance. However, Petitioner has not shown that counsel's failure to object to either report and recommendation prejudiced him under Strickland.

In the First Report and Recommendation, Judge Barksdale recommended that the Court deny the First Motion to Suppress and Supplemental Motion based on the testimony of the JSO officers involved in the traffic stop. (Crim. Doc. 62). Judge Barksdale recommended that: (1) under United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009), Officer Valerio had probable cause to stop Petitioner's vehicle based on observing a traffic infraction; (2)

---

Strickland, it is enough to say that counsel's performance was not objectively unreasonable. Strickland, 466 U.S. at 687-88.

under <u>Pennsylvania v. Mimms</u>,  434 U.S. 106, 111 (1977), Officer Valerio reasonably asked Petitioner to step out of the vehicle, which was a negligibly burdensome intrusion; (3) under <u>Rodriguez v. United States</u>, 135 S. Ct. 1609, 1616 (2015), the canine sniff of Petitioner's vehicle was lawful because it did not prolong the traffic stop; and (4) under <u>Florida v. Harris</u>, 133 S. Ct. 1050, 1058 (2013), the canine's alert to the presence of narcotics gave the officers probable cause to search the vehicle, where the canine's reliability had been established. Petitioner fails to identify any legal or factual infirmity in these findings.

Likewise, the Court perceives no legal or factual infirmity with the Second Report and Recommendation, in which Judge Barksdale recommended that the Court deny Petitioner's Second Motion to Suppress. Judge Barksdale recommended that the August 6 search warrant was validly obtained, and that there had been no chicanery regarding the judge's signature or the dates on the search warrant and warrant affidavit. (Crim. Doc. 75). Judge Barksdale's recommendation was based on a credibility determination in favor of Detective Medlin, the only witness who testified at the second suppression hearing. (<u>See</u> <u>id.</u> at 3, 4).

Upon <u>de novo</u> review, the Court agreed with Judge Barksdale's analysis, which it adopted as the opinion of the Court. (Crim. Docs. 65, 78). Petitioner fails to describe what meritorious legal or factual objection counsel could have raised. (<u>See</u> Civ. Doc. 5 at 7). Because Petitioner fails to articulate any

nonfrivolous grounds for objecting to either of the reports and recommendations, or why such arguments would have prevailed, he has not shown a reasonable probability that the outcome of the proceedings would have been different but for counsel's omission.

Accordingly, Petitioner has failed to demonstrate a reasonable probability that, even if trial counsel had objected to either report and recommendation, the outcome of the proceedings before the district court or the Eleventh Circuit Court of Appeals would have been different. As such, relief on Ground Two is due to be denied.

### C. Ground Three

Petitioner claims that trial counsel gave ineffective assistance by failing to have Judge Stetson testify at the second suppression hearing on August 27, 2015. (Civ. Doc. 5 at 11). Petitioner asserts that "[t]here were serious issues and concerns addressed in the second suppression hearing regarding the dates and signatures of the State Judge, Brad Stetson on the August 6, 2014 warrants." (Id.). According to Petitioner, counsel's failure to call Judge Stetson "prejudiced Mr. Broomfield from his right to call or have the most important witness that could have cleared up any accusations or wrongdoings." (Id.). However, Petitioner fails to explain to what he thinks Judge Stetson would have testified. And, he does not allege that Judge Stetson's testimony would have changed the outcome of the second suppression hearing.

At the August 27, 2015, suppression hearing, trial counsel requested a third hearing so that he could present Judge Stetson's testimony, prompting an extended discussion about the merits of that request and why counsel had not already called Judge Stetson. (See Crim. Doc. 136 at 48-60). Ultimately, Judge Barksdale recommended that the Court deny the Second Motion to Suppress without compelling Judge Stetson to testify. (Crim. Doc. 75 at 8 n.7). The undersigned agreed. (See Crim. Doc. 78).

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[6] Even if counsel's failure to call a witness "appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Thus, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) (citation omitted). Additionally, "evidence

---

[6]    Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted) (cited by <u>Estiven v. Sec'y, Dep't of Corr.</u>, No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sep. 28, 2017) (order denying COA)).

Petitioner provides no affidavit or proffer of testimony from Judge Stetson setting forth what his testimony would have been. Thus, Petitioner has offered no evidence that, even if Judge Stetson had testified, his testimony would have affected the outcome of the second suppression hearing. Instead, Petitioner only vaguely suggests that Judge Stetson's testimony might have been helpful. However, "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636 (11th Cir. 1985)). Because Petitioner's "self-serving speculation" that Judge Stetson's testimony would have been favorable "will not sustain an ineffective assistance claim," <u>Ashimi</u>, 932 F.2d at 650, Petitioner has not shown that counsel's failure to call the judge was deficient or prejudicial under <u>Strickland</u>. As such, relief on Ground Three is due to be denied.

### D. Ground Four

As Ground Four in the Motion to Supplement, Petitioner claims that trial counsel gave ineffective assistance by failing to investigate the circumstances surrounding the issuance and execution of the August 6 search warrant. (Civ. Doc. 11-1). Petitioner claims that, as a result of a public records request, he discovered that the warrant affidavit and search warrant were not part of the "files on record" with the state court. (Id. at 2). Petitioner argues that "[w]ithout these Affidavit and Warrants [ ]ever being legally filed on the record in the State Court of Duval County Clerk's Office under State Case no.: 16–2014 –CF– 007516–AXXX–MA these warrants were never legally binding and this court was without jurisdiction to here [sic] this case." (Id. at 3).

Petitioner further claims that had counsel conducted an adequate investigation, he would have learned that (1) the August 6 search warrant and warrant affidavit "never listed a time for the installation or a duration of time in which this tracking should occur," and (2) that the Assistant State Attorney assigned to the investigation declined to prosecute the case. (Id. at 2). Petitioner also asserts that the execution of the August 6 search warrant did not comply with Federal Rule of Criminal Procedure 41(f)(2)(A), which requires that "[t]he officer executing a tracking-device warrant must enter on it the exact date and time the device was installed and the period during which it was used." (Civ.

Doc. 11-1 at 2-3).[7] Petitioner contends that as a result, the August 6 search warrant allowed for open-ended collection of cell site data. (See id. at 3).

The United States concedes that Ground Four relates back to the initial § 2255 motion. (Civ. Doc. 16 at 9). However, the United States argues that Ground Four lacks merit because Petitioner has not shown that the evidence would have been suppressed even if counsel had raised these issues. (Id. at 12). The United States further argues that counsel's decision to pursue the Fourth Amendment arguments that he did, instead of the issues presented in Ground Four, was a reasonable strategic decision. (Id. at 17-18).

The Court will grant the Motion to Supplement to the extent that it considers Ground Four on the merits. However, Petitioner has failed to show that counsel gave ineffective assistance. Counsel thoroughly investigated the circumstances surrounding Petitioner's search and seizure on August 8, 2014, as well as the issuance of the August 6 search warrant. That much is reflected by counsel's filing of two motions to suppress (see Crim. Docs. 47, 59, 67) and his able advocacy at two evidentiary hearings (see generally Crim. Docs. 61, 136). Counsel challenged, among other things, the validity of the August 6 search warrant, as well as whether the police had probable cause to stop

---

[7]     Rule 41(f)(2)(A) sets forth the requirements for executing a tracking device warrant. Rule 41(e)(2)(C) sets forth the required contents of a tracking device warrant.

Petitioner and search his vehicle on August 8, 2014. Counsel could reasonably have determined that these were stronger issues than the ones Petitioner complains that counsel failed to raise. A lawyer does not give ineffective assistance by failing to pursue every conceivable argument. See Davila v. Davis, 137 S. Ct. 2058, 2067 (2017). Petitioner bears the burden of persuasion, and he has failed to negate the strong presumption that counsel's performance might be considered sound trial strategy. See Chandler, 218 F.3d at 1314 & n.15.

Moreover, the issues that Petitioner raises in Ground Four lack merit. First, Petitioner points to no authority supporting his proposition that a search warrant is not "legally binding" unless a clerk of court records the warrant in the court's files. (Civ. Doc. 11-1 at 2-3). Nor has Petitioner been denied access to the search warrants or their accompanying affidavits in defending himself. Both trial counsel and former collateral counsel were able to obtain copies of the warrants and warrant applications. (See Crim. Doc. 67-1; Civ. Doc. 1-1).

Second, the Assistant State Attorney's decision not to prosecute Petitioner's case in state court is immaterial. Counsel did not perform deficiently by not raising this issue, including in a motion to suppress.

Third, Petitioner's claim that the issuance and execution of the August 6 search warrant failed to comply with the requirements for a tracking device warrant under Rule 41 – such as an officer's failure to note on the warrant the date when the "tracking device" was "installed" – lacks merit. "Rule 41 governs

searches that are 'federal in execution.'" <u>United States v. Brown</u>, 569 F. App'x

759, 762 (11th Cir. 2014) (quoting <u>United States v. Lehder-Rivas</u>, 955 F.2d

1510, 1522 (11th Cir. 1992)). "A search is federal in execution if a federal official

had a hand in it." <u>Id.</u> JSO officers conducted the investigation that led to

Petitioner's arrest, and Petitioner points to no evidence that federal officials

were involved in obtaining the August 6 search warrant. Thus, Rule 41 did not

govern the search warrant. It was therefore not unreasonable for counsel not to

argue that the search warrant failed to comply with Rule 41's requirements for

a tracking device warrant.

Finally, Petitioner argues that the August 6 search warrant and warrant

application failed to specify the duration of JSO's authority to collect real-time

cell site data, resulting in an "open ended" search warrant. However,

> [t]he Fourth Amendment does not specify that search warrants
> contain expiration dates. While the amendment requires an "[o]ath
> or affirmation ... particularly describing <u>the place</u> to be searched,
> and <u>the persons or things</u> to be seized," it contains no requirements
> about <u>when</u> the search or seizure is to occur or the <u>duration</u>.

<u>United States v. Gerber</u>, 994 F.2d 1556, 1559 (11th Cir. 1993) (emphasis in

original) (quoting U.S. Const. amend. IV). That said, the August 6 search

warrant was not open-ended. Although the warrant itself did not contain an

expiration date, it incorporated by reference "the duration of the court

authorized PEN/DNR[8] for telephone number (404) 936-7241, which is already in place." (Civ. Doc. 5-2 at 2). That preexisting order, which the state court issued on July 31, 2014, authorized the use of a pen register or trap/trace device "for a period not to exceed sixty (60) days from the date of this Order." (Civ. Doc. 1-1 at 23). Thus, the August 6 search warrant would have expired at the same time as the PEN/DNR order, or September 30, 2014. Moreover, JSO officers collected cell site data for only a few days under the August 6 search warrant before Petitioner was arrested on August 8, 2014.

Petitioner has failed to identify a meritorious Fourth Amendment claim that counsel could have raised. As such, he has failed to show that counsel's performance was deficient or prejudicial under <u>Strickland</u> and <u>Kimmelman</u>. Relief on Ground Four is due to be denied.

### E. Ground Five

Finally, Petitioner claims that the AUSA who prosecuted the case "was without authority to represent the United States during the relevant period, and accordingly, this Court lacked jurisdiction to entertain that prosecution…." (Civ. Doc. 11-2 at 2). The United States argues that Petitioner failed to timely file this claim, and that the allegations do not relate back to those in the initial § 2255 motion. (Civ. Doc. 16 at 9). The United States also argues that the claim

---

[8]      "PEN/DNR" refers to a pen register or "dialed number recorder."

is procedurally defaulted. (Id. at 18-20).

The Court agrees that Petitioner failed to timely raise Ground Five. Under 28 U.S.C. § 2255(f)(1), Petitioner had until January 1, 2019, to timely raise any claims for relief from his conviction and sentence. Petitioner did not raise this claim until he filed the Motion to Supplement on May 8, 2019. This claim is therefore untimely under § 2255(f)(1). Petitioner does not allege or explain how the extended limitations periods under §§ 2255(f)(2)-(4) are applicable. (See Civ. Doc. 11; Civ. Doc. 11-2).

Petitioner can avoid the statute of limitations if Ground Five relates back to the allegations in the original § 2255 motion. Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In Mayle v. Felix, the Supreme Court adopted a narrow interpretation of the phrase "conduct, transaction, or occurrence" in habeas cases, holding that relation back should be allowed "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. 644, 657 (2005) (citation omitted); see also id. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of

operative facts, relation back will be in order.") (footnote omitted).

The proposed claim in Ground Five does not relate back to the original § 2255 motion. In the original § 2255 motion, Petitioner argued that trial counsel gave ineffective assistance by failing to competently litigate his motion to suppress. (See Civ. Docs. 1, 2). Petitioner alleged no facts and raised no claim regarding the prosecutor's qualifications to represent the United States. As such, Ground Five is not "tied to a common core of operative facts" and "relation back will [not] be in order." Mayle, 545 U.S. at 664. Accordingly, the Motion to Supplement is denied to the extent Petitioner seeks to add Ground Five.[9]

## V.    Conclusion

The Court has considered each of Petitioner's claims, but finds that none warrants relief under 28 U.S.C. § 2255. Therefore, it is hereby **ORDERED:**

1. Petitioner Donald Broomfield's Motion to Supplement (Civ. Doc. 11) is **GRANTED** to the extent that the Court considers the merits of Ground Four (Civ. Doc. 11-1), and **DENIED** to the extent Petitioner seeks to add Ground Five (Civ. Doc. 11-2).

2. Petitioner's pro se Second Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 5), as supplemented

---

[9]     In any event, this claim is frivolous for the reasons explained in Rosenfeld v. United States, No. 3:18-cv-607-J-34JRK, 2020 WL 364179, at *9 (M.D. Fla. Jan. 22, 2020).

with Ground Four (Civ. Doc. 11-1), is **DENIED**.

3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is

not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of August, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19
C:
Counsel of record
Pro se petitioner